IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

## *MIDDLE DIVISION.*

NASHVILLE,.....................DECEMBER TERM, 1874.

R. W. McCRASLY & Co. *v.* H. W. HASSLOCK, *et als.*

1. DEED OF TRUST. *Fraudulent conveyance.* Where a bill is filed alleging fraud in fact in a deed of trust securing a note for borrowed money, and the answer admits that only a small portion of the sum mentioned in the note was advanced prior to its date, the Court say: "This much of the answer is responsive to the allegation, and an admission of its truth. The explanation as to the $12,000 being intended to cover future advancements is in avoidance, and not being supported by proof, cannot be noticed. The recital could not have been made by mistake, but must have been intentional, and being false, is evidence of actual fraud."

    Authority cited: Bump on Fraud. Con., 85.

2. SAME. *Same.* Where the trustee is not required to take possession of the goods mentioned in the deed without limiting the debtor in his discretion as to the appropriation of the proceeds of sales, no distinction being made as to goods to be bought for replenishing the stock,

1—VOL. 4.

McCrasly & Co. v. Hasslock, et als.

whether for cash or on credit, but the entire stock is to be held under the trust conveyance, the same is void, and if the amount mentioned in the deed is to stand as security for future advancements, to enable the debtor to trade upon the goods in his possession, and such others as he may bring into the stock, the Court say: "The conclusion is irresistable that the conveyance was made to hinder and delay creditors, and is, therefore, fraudulent in fact and absolutely void."

Case cited: National Bank v. Ebbett, 9 Heisk., 153.

3. SAME. *Same. Chancery Practice.* Since the Act of 1851–2, §4288–91 of the Code, the remedy to reach the proceeds of property fraudulently conveyed is as ample without judgment and return of *nulla bona* as it was before with such judgment and return.

Case cited: Green v. Starnes, 1 Heisk., 582.

Code cited: §4288–91.

Acts cited: Acts of 1806 and 1851–2.

---

FROM DAVIDSON.

---

Appeal from the Chancery Court.    E. H. EAST, Chancellor.

JNO. RUHM for Hasslock.

T. M. STEGER for MCCRASLY.

NICHOLSON, C. J., delivered the opinion of the Court.

On the 9th of January, 1867, H. W. Hasslock executed a deed of trust to Julius E. Raht as trustee, in which it was recited, that "I am indebted to Charles Raht in the sum of $12,000, by note executed by me November 2, 1866, and due November 2, 1868, which said note was given for money loaned and advances made to my relatives in Germany by said Raht, and I am desirous to make certain and secure the

payment of the same. Now, if I should pay said note at the time aforesaid, with all accruing interest thereon, then this deed of trust to be void. Upon failure to pay said note the trustee is to sell in the manner prescribed, and apply the proceeds: 1st, to the payment of all expenses; 2d, to the satisfaction of said debt; and 3d, the balance, if any there be, to the maker of the deed. The stock of drugs, medicines, paints, fixtures, etc., is estimated to be worth $15,000, and the deed has this additional clause: "and in this conveyance it is intended to be included such goods as may be hereafter brought into this store for the purpose of replenishing the stock for the space of two years."

The trust deed was properly registered soon after its execution. Hasslock continued in possession of the goods, selling in his own name, and replenishing the stock by new purchases until July 20, 1869, when the stock was sold to John W. Martin & Co., who executed their notes to Julius E. Raht, the trustee, for $2,241 42 and $1,741 42. These notes were afterwards given as a present to Hasslock's wife by the trustee.

Complainant's became creditors of Hasslock after the execution and registration of the trust deed, and file their bill to have the notes of Martin & Co. applied to the satisfaction of their claims, upon the ground that the deed of trust was fraudulent in fact and in law, and, therefore, void as to subsequent as well as existing creditors.

Complainants charge that no such debt as that de-

scribed in the deed was owing by Hasslock to Charles
Raht, and that it was made to cover up a future mer-
cantile business, including future · purchases, and also to
cover and keep out of the way of creditors, not
only a large stock of goods then on hand, but all
future purchases for a long time, with an express reser-
vation in favor of the maker of the deed of the sur-
plus. · They allege that Julius E. Raht holds the notes
of Martin & Co. for the benefit of Hasslock.

Defendants answer and insist strenuously upon the
*bona fides* of the transaction by which Hasslock con-
veyed his stock of goods in trust to Julius E. Raht.
Hasslock states that his indebtedness to Charles Raht
was actually existing in good faith; that it commenced
in 1861, when Raht sent to respondent's sister money
to Germany, and advanced Hasslock a sum of money
to purchase a stock—in all $1,500; and that in Novem-
ber, 1866, $2,000 was drawn by Hasslock on a letter
of credit of Charles Raht, in consideration of which
Hasslock executed to Raht the note for $1,200, and
that from January, 1868, to November, 1868, about
$4,000 was drawn, at various times, and that Raht
paid complainants McKissen & Robbins $500, and to
complainants McCrasly & Co. $1,000 for Hasslock.

Julius E. Raht positively affirms the *bona fides* of
the debt due Charles Raht, and that at the time of
the sale of the goods to Martin & Co. the debt of
Hasslock to Charles Raht was about $4,000, of which
the $1,000 paid to complainants McCrasly & Co. was
part. He positively denies that the debt to Charles

Raht was fraudulent, or that the deed was fraudulent in fact.

The only proof in the case was the admission of defendants that Hasslock bought and sold goods in his own name from the time the deed of trust was executed until the sale to Martin & Co.

Before the hearing, the wife of Hasslock was permitted to become a party, and to set up her claim to the notes of Martin & Co., by gift from the trustee, to whom they were payable.

The Chancellor was of opinion that the trust deed was fraudulent, and subjected the notes of Martin & Co. to complainants' claims.

Defendants have appealed.

The first question is, whether the trust deed was fraudulent in fact—in other words, whether it was made with the intent to hinder, delay, or defeat the creditors of the maker of the deed?

The deed recites an existing indebtedness by Hasslock to Charles Raht of $12,000, and states with precision that the note therefor, dated November 2, 1866, and due November 2, 1868, " was given for money loaned and advances made to my relatives in Germany by said Raht." This is an unambiguous declaration, that prior to November 2, 1866, Charles Raht had loaned and advanced money to his, Hasslock's relations in Germany to the amount of $12,000, and that the stock of goods was conveyed to secure the payment of this debt.

Hasslock only claims that Charles Raht had ad-

vanced $1,500 prior to the date of the note, and only a part of this was money advanced for Hasslock's relatives in Germany. It is clear that much the larger portion of the indebtedness stated in the deed was fictitious and false.

This much of the answer is responsive to the allegation, and an admission of its truth. The explanation as to the $12,000 being intended to cover future advancements is in avoidance, and not being supported by proof, cannot be noticed. The recital could not have been made by mistake, but must have been intentional, and being false, is evidence of actual fraud. Bump Fraud. Convey., 85.

But this $12,000 note is not only secured by the conveyance of the stock of goods then on hand, estimated to be worth $15,000, but it is provided that " in this conveyance it is designed to be included such goods as may be hereafter brought into this store for the purpose of replenishing the stock for the space of two years." The obvious purpose of the deed was to place $15,000 worth of goods under the cover of a pretended debt of $12,000, and during two years to secure the right to trade upon them, without interruption from existing creditors, and also to replenish the stock during two years, and to hold the goods so brought into the stock during that time under the same fictitious cover, free from interruption by subsequent as well as existing creditors. The trustee is not required to take possession or control of the goods until after two years; in the meantime the fair presumption

is that Hasslock was to continue in possession and manage the trade, without any limitation as to his discretion in appropriating the proceeds of sales. No distinction is made as to the goods to be bought for replenishing the stock, whether for cash or on credit; but, whether bought the one way or the other, they are to be held under the cover of the $12,000 debt, pretended to be owing for that amount advanced by Charles Raht to Hasslock's German relatives.

The only evidence in the case is, that Hasslock did continue the business in his own name, and after more than two years the stock is reduced from $15,000 to about $4,000, and then sold out to Martin & Co. for about $4,000, on a credit, and soon afterward the notes are in the possession of Hasslock's wife as a gift from the trustee, there still being, according to the answer, $4,000 due from Hasslock on the pretented debt of $12,000, which the trustee is to arrange.

If authorities were needed to stamp such transactions with fraud, the late case of *National Bank* v. *Ebbert,* decided by this Court, is conclusive.

In the present case, if Hasslock owes Charles Raht anything (of which there is no legitimate evidence), it was only a small amount, for money advanced to his German relatives. This small indebtedness is made the *nucleus* for covering up goods worth $15,000, by falsely announcing on the register's books that it is a subsisting debt of $12,000, instead of only a debt of a few hundred dollars. But it is alleged, but not proven, that there was a private parol agreement that the

$12,000 note was to stand as security for other advancements to be made, not to Hasslock's German relatives, but to enable him, for two years, to trade upon the goods already in his possession, and such others as he might buy during the two years.

Upon these facts, and the plain intent of the parties, as indicated on the face of the deed, the conclusion is irresistable that the conveyance was made for the purpose of hindering and delaying the creditors of Hasslock, and, therefore, fraudulent in fact, and absolutely void, not only as to existing, but as to subsequent creditors.

It is insisted, however, that as complainants are not seeking to reach the specific property contained in the trust deed, but the notes of Martin & Co, which are the proceeds of the sale of the property, they are not entitled to the relief prayed for.

But the bill in this case is filed under the provisions of the Code, which authorize creditors to file bills to set aside fraudulent conveyances of property, or other devices resorted to for the purpose of hindering and delaying creditors. Code, §§4288-91.

It was said in the case of *Green* v. *Starnes*, 1 Heisk., 582, that "it is manifest that the object of the Legislature in making these provisions of the Code was to facilitate the remedy against fraudulent conveyances, and to obviate the cases in which it has been held, in giving construction to the Act of 1806, that no man can be recognized as a creditor until he has obtained

his right to claim in that character by a judgment at law or a decree in Chancery."

The present bill is filed, not for the purpose of subjecting the property conveyed in the trust deed on account of fraud, but to have the deed declared fraudulent as to creditors, with the view of subjecting the proceeds of the sale of the property in the hands of the trustee, who, by reason of the fraud, holds them as trustee for Hasslock's creditors. It is clear that such a bill, based on judgment and return of *nulla bona,* would have been entertained before the Act of 1851–2, Code, §4288. Since that Statute, the remedy to reach the proceeds of property fraudulently conveyed is as ample without judgment and return of *nulla bona* as it was before with such judgment and return.

The trustee, in the execution of the fraudulent deed, sold the goods to Martin & Co. They were innocent purchasers, and got a good title, but their notes, payable to the trustee, belonged to Hasslock, and were subject to be reached by his creditors. The trustee had no right to convert or appropriate these notes. He was not the holder of them as an innocent purchaser, and, therefore, cannot resist the claim of complainants to have them applied to the satisfaction of their debts.

As we are satisfied that the deed of trust was made with the intent to hinder and delay the creditors of Hasslock, we have not deemed it necessary to notice the authorities relied on by defendants, looking to the deed either as valid, or as only fraudulent in law.

---

Those authorities have no application, in the view we take of the trust deed.

We find no error in the decree, and affirm it with costs.